Our fourth case for this morning is Mossen Karroumeh v. Attorney General Loretta Lynch Good morning Your Honor. May it please the court, my name is Erin Cobb. I am here on behalf of the petitioner Mr. Mossen Karroumeh. About 14 years after Mr. Karroumeh obtained his lawful permanent residency status, the Department of Homeland Security accused him of obtaining that status through fraud. That is, through engaging in a sham marriage, a marriage entered into only for the purposes of immigration. In order to meet their burden in the removal proceedings they initiated, they provided the sworn statement by his ex-wife, Terry Wright. Their burden in this proceeding was clear and convincing evidence. Now, Congress has guaranteed in the Immigration and Nationality Act that all aliens in removal proceedings have the right to a reasonable opportunity to cross-examine the witnesses presented by the government. And this court in Malave has stated that a witness is no less a witness when their testimony comes in on paper than when they are live in court. Therefore, Mr. Karroumeh had the right to a reasonable opportunity to cross-examine his ex-wife. So let me ask you this Ms. Cobb, how was this argument presented to the Board of Immigration Appeals? Before the Board of Immigration Appeals, Mr. Karroumeh had argued, he took specific issue with a judge stating that the department had, I believe the words were, exercised every effort. He even quoted the immigration judge on that front, stating that he had used every effort to present the witness, had even asked for her address. In his brief before the Board, Mr. Karroumeh raised that direct issue and also said that there should have been steps to enforce the subpoena if the subpoena were issued. So the Board says that he wasn't entitled to ask for that. Correct. I think, because it had been the department that had sought the subpoena. That's correct. Does he make a legal argument that that's not correct? I mean, your position at this moment, as I understand it, is that it's actually not a party burden at all. That it's the responsibility of the immigration court, you know, and then the Board to ensure the compliance with the subpoena. To make those all reasonable efforts. Right. I think that before the Board, Mr. Karroumeh was in a difficult place. He wasn't sure. He didn't know until the date of the hearing about the status of the subpoena. And so he was both arguing, I think, kind of seeing what would stick. He was arguing both that the immigration judge's finding was incorrect and that further steps to enforce the subpoena should have been taken. Now, obviously, you know, we argued on our appeal that that enforcement is mandatory in the regulations. It says that the judge shall take these certain steps if the witness does not appear, whether neglect or an outright refusal. Because it is the respondent in the immigration court, in the aliens, because it is the aliens' right to cross-examination that needs to be protected, it should be the department that's taking the steps. But the alien also needs to be able to protect their own rights if the department isn't going to do it. So do you think the Board made a legal error when it said to him, you aren't entitled to complain about this? I do think so. Correct. Because, again, the language is mandatory. It doesn't put the burden on one party or the other to ask the judge. It is an action that the judge himself is supposed to take or herself is supposed to take when the person does not appear. So there's another aspect to this that, before you sit down, I'd like you to comment on, which is the question whether a showing of prejudice from the failure to support the subpoena is necessary, and if so, what can we look to to show, to discover prejudice? There is a lot of circumstantial evidence to which the Board points and the judge pointed to suggest that this might have been a sham marriage. Okay. Yes, we do have to show prejudice. The Court has held that in Pujova and in a number of cases that when there is a statutory error, when we are claiming a statutory violation of rights, that we do have to show prejudice. We do acknowledge that. Now, I think when you read through the Board's opinions step by step, you can see that he accorded incredible weight to the statement. For example, when he first summarized the evidence, the statement was the first piece of evidence that he mentioned. That's on page 11 of the administrative record. Then pages 13 through 17, when he goes through the detailed examination of the evidence piece by piece, he consistently returns to the statement. So when he talks about the cohabitation of the parties, he returns to the statement. When he talks about Ms. Wright's driver's license, he returns to the statement. When he talks about the leases, he goes back to the statement. When he talks about the separation, whether or not they were separated and when was the date of separation, he goes back to the statement. When he addresses Mr. Karuma's testimony regarding supporting his wife versus the words of the statement about the money that may or may not have been paid and what the purpose was, again, he goes back to the statement. Then when he's weighing the evidence on page 17, the first piece he picks up on is the statement and says that it is extremely damaging. So cross-examination. As I recall, he did have a section in his brief in which he said, here are the things I think I could have asked. Correct. If she was present, and it appears her kids were attending Chicago Public Schools, so it appears that she's present in the city. If she was present, which she could have been, then there are many things that Mr. Karuma could have asked him. For example, in the sworn statement, she mentioned that they had plans to buy the house. He could have asked her to elaborate on that. She talked about living together versus staying together. She used the word stay. Mr. Karuma used the word live. We could expand upon that and have asked her questions about that. Mr. Karuma testified about them being in frequent contact when she was living in Mississippi and sending her money to support her down there. We could have asked for verification from Ms. Wright on that contact. He testified that she was very impatient to get a larger apartment. She testified they divorced because of lies. There are a lot of things that could have been expanded upon had we had the opportunity to actually ask her those questions. Would there be any reason why she would not want to testify? I thought I saw something about that. So in the motion for the subpoena, the court said, or not the court, I'm sorry, the department stated in the motion that they contacted her and she was unwilling to come to court, I think was the word that they used, but I'm not exactly precisely sure. I don't know. I guess we can all speculate as to reasons. I don't know the answer to this. Would she be vulnerable to some discipline or something herself if she was involved in a sham marriage? There is a criminal statute which, yes, criminalizes the conduct on the U.S. citizen side as well. However, in her statement she never said that she was paid. You know, many times I know this court sees cases where there is a direct statement that says she was paid a certain amount of money to engage in marriage. That was never in the statement. The question does not even appear to have been asked, at least according to the statement. Is that an element then? I'm sorry? Is that an element of the crime, got to be paid? It's not an element of the crime, I don't think. I mean, I guess someone could enter a sham marriage for another reason, at least on the U.S. citizen part. But it's not frequent, frankly, that the U.S. citizen is prosecuted. Most of the time they go after the alien. It's much more common for them to go after the alien. You'd export them. Exactly. Well, if you'd like to save just a bit for rebuttal, you may. Ms. Martin. Good morning, Your Honors. May it please the Court, my name is Christina Martin. I'm here on behalf of U.S. Attorney General. I'm going to start you right out because the government's brief repeatedly recites that the government used reasonable efforts to secure Ms. Wright's presence. And I would like a list, if you could, of those efforts because the Petitioner says that the government did nothing more than obtain a subpoena for the wrong date and then never served it on the witness. And I have been wondering where in the record will we find the government's efforts? Well, Your Honor, first of all, a subpoena was issued. DHS requested a subpoena. Wrong date. Wrong date. For the wrong date, though. For the wrong date. Right. That was the initial hearing, but then it was continued. But if your only evidence, I think this is the less kind way of putting the point Judge Rovner just made, if the only evidence constituting, quote, reasonable efforts is one issuance of a subpoena for a date that one could see long in advance was the wrong date, it wasn't like the judge changed dates at the last second, and that's it. No proof of service. No amended subpoena with the correct date. No nothing. I have a very hard time characterizing that as a reasonable effort. That looks to me like no effort at all. Well, in preparation for oral argument, Your Honors, I did reach out to ICE here in Chicago, and they did provide me with additional information. Unfortunately, it was not in the record about the subpoenas. Well, then it's not in the record. If it is not in the record. Right. The board didn't make a decision, but the board didn't make a decision based on that. The board actually didn't necessarily discuss reasonable efforts and look more towards the petitioner who didn't have the regulatory right. But that's absurd. The petitioner is the one with everything to lose from a hearing at which the statutory and regulatory procedural protections provided in the Immigration and Nationality Act are not complied with. And so if the petitioner alerts the board or the immigration judge, either one, to a problem like why isn't this subpoena being enforced, then to say, no, we're not going to listen to you because you didn't ask for the subpoena when the language of the relevant statute seems clearly to place the responsibility on the judge to make sure this all gets done properly is absurd. At the IJ level, Your Honor, I don't believe that there was an objection made about the subpoenas. And this all begs the question, you're right, when we're talking about fundamental fairness in an immigration hearing, this all begs the question, if this was going to be enforced, would that not be speaking of, I'm so sorry. No, I'm sorry. It's hard for you. I'm terribly sorry. But, I mean, speaking of fundamental fairness, would the government concede that without Ms. Wright's affidavit, there's insufficient proof to meet the government's burden of demonstrating clear and convincing evidence that this marriage was a sham? As you saw by the record, there were quite a few other pieces of information of documents that were But they didn't necessarily push you in the direction of sham. People live in different places. Somebody's mother gets sick in Mississippi. Economic reasons might cause a husband and a wife to have an apartment that's too small for the children. There's very little that isn't easily explainable. If the burden of proof were on the alien, then perhaps you could hold that as more powerful evidence. But it wasn't. It was on the government, and not only a preponderance, but clear and convincing. Ms. Cobb argues that the statement was the most important piece of information here, but we would argue that actually the most important information was the testimony by the agent who actually performed the fraud investigation. No, no, no. How can it satisfy due process for an IJ to accept some investigator's assessment of Ms. Wright's credibility? Why would it matter that the government produced that investigator, you know, who secured the affidavit? Well, in many of the cases that deal with this issue, with when a witness doesn't appear, when the government wants to submit an affidavit and the witness refuses to appear, a lot of times they'll ask the agent who conducted the investigation to appear to explain. And that would be fine if it weren't for the security. Right. Excuse me. The witness didn't refuse. She didn't have the right date. How do we know what she would have done? Well, it's not in the record, but there was a second subpoena issue. Oh, if it's not in the record, no, no, no. Yeah. You have to litigate these things as though they matter. And not putting things in the record isn't a good way to do it. I apologize, Your Honor. I think that this issue comes up so infrequently, and there's such a dearth of cases, especially in the Seventh Circuit, about subpoenas. Maybe this will change. I have to tell you, I think it was cruel of the government to send you here today, because it's just what happened here is really wrong. I'm sorry, Your Honor. Is that concerning due process or considering the marriage fraud? Just considering how the statute actually requires to take the IJ, to take steps. And the other thing, with this record being the way it is, in Mr. Karume's appellate brief before the board, he presented two issues. One, did the judge err in the grant of his subpoena, and if not, did he err in implementing and enforcing the subpoena when the person subpoenaed was clearly available? Two, did the IJ err in allowing evidence from an affidavit when the third party declarant was available but not present in court? If there was really all this other evidence, nothing would have prevented the Department of Homeland Security from going to the board and saying, please remand to the immigration judge. He did what he needed to do to exhaust this before the board. Your Honor, I argue that when it comes to prejudice, that he could have easily requested subpoena as well, and he never once did. But what's somebody supposed to do? Every time the government requests a subpoena, just issue a duplicate request because you know the government's not going to do anything? He even admits during his testimony he's had no contact with his ex-wife. Sure. She's the ex-wife. I mean, you know, it doesn't really surprise me. Some of us have ex-husbands and we don't go out of our way. But I would argue that he hasn't clearly proven that her testimony would have been the linchpin for turning this whole case around, for completely changing the fraud investigation. Ms. Cobb suggested that actually that's not a reasonable reading of either the IJ or the board's opinion. Well, if no one else has any more questions. Judge Rovner? Apparently not. So we appreciate your presentation. Thank you. All right, thank you. Anything further, Ms. Cobb? Does the Court have any questions for me? Otherwise, I just have one great statement from the Fifth Circuit. One is, as I understand it, he was a permanent legal resident. Yes. And a couple of times he tried to go through the citizenship. The citizenship, mm-hmm. And that basically exposed him. If he had done nothing, I mean, he'd have been, I won't say free and clear, but he'd have been here for keeps. That generally is the way it works. That's the experience we have, that you go before the Immigration Service again for naturalization, they go through the file, and then, yes, that is what initiated the investigation. So he'd have been wise just to be quiet and continue to work and to live, huh? Yeah, but he wanted a citizenship. He's been here for almost 20 years. Yeah, well, okay. Yeah. Thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.